IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No. 12-cv-00049-REB-MJW

211 EIGHTH, LLC, a Colorado limited liability company, and
PRINCE CREEK CONSTRUCTION, INC., a Colorado corporation,

      Plaintiffs,

v.

TOWN OF CARBONDALE, a Colorado home-rule municipality,
NANCY BARNETT, in her official capacity as Acting Town Manager for the Town of
Carbondale, Colorado, and
JOHN PLANO, in his official capacity as the Building Official for the Town of
Carbondale.

      Defendants.

---

## ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

The matters before me are (1) **Defendants' Motion for Partial Summary

Judgment and Memorandum Brief in Support Thereof** [#50],[1] filed November 16,

2012; and (2) **Plaintiffs' Motion for Partial Summary Judgment** [#49], filed November

16, 2012.[2]  I grant defendants' motion for summary judgment in part and deny it as moot

in part, deny plaintiffs' summary judgment motion as moot, and remand the state law

---

[1]  "[#50]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

[2]  The issues raised by and inherent to the cross-motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the cross-motions stand submitted on the briefs.  *Cf.* **Fed. R. Civ. P.** 56(c) and (d).  ***Geear v. Boulder Community Hospital,*** 844 F.2d 764, 766 (10th Cir.) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), ***cert. denied***, 109 S.Ct. 312 (1988).

claims to the state district court from which they were removed.[3]

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

question) and 1367 (supplemental jurisdiction).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(c);

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d

1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant

who bears the burden of proof must submit evidence to establish every essential

element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc.***

***Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once

---

[3] My resolution of the cross-motions for summary judgment moots consideration of **Plaintiffs'
Motion *In Limine* To Exclude Testimony of Gary Suiter** [#34], filed October 17, 2012.

the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

The Town of Carbondale, Colorado (the Town), a home rule municipality, has enacted an affordable housing ordinance "to mitigate the impact of market rate housing construction on the limited supply of available land suitable for housing" within the town. (**Def. Motion App.**, Exh. A-3 ¶ 15.25.020 at 7.)  The ordinance establishes "community housing requirements for [residential] development which require[] a portion of all new residential development to be set aside for Community housing purposes as a condition of approval for such development."  (*Id.*)

In December 2005, plaintiffs submitted an application to the Town for a development known as Cleveland Place II.  Plaintiffs were granted a number of variances in connection with development of the project (*see id.*, Exh. A-3 ¶ 15.20.100 at 10) and construction was allowed to begin on the infrastructure before the plan was fully approved.  Subsequently, in July 2007, plaintiffs and the Town entered into a Subdivision Improvement Agreement ("SIA") (*id.*, Exh. A-8) and a Planned Unit Development Agreement ("PUD") (*id.*, Exh. A-9), which were approved by local ordinance (*id.*, Exh. A-10).

3

Pursuant to the SIA, plaintiffs agreed to a number of "conditions of approval and installation of public improvements," including, most importantly for present purposes, two units of community housing,[4] designated as Lots 1A and 1B, which were to "be ready for occupancy as required by the Carbondale Municipal Code." (*Id.*, Exh. A-8 ¶ 2.b(xv) at 4.)  The code, in turn, states that community housing units "shall be ready for occupancy no later than the occupancy of free market units within the project." (*Id.*, Exh. A-3 ¶ 15.25.070(C) at 9.)

Development of Cleveland Place II proceeded, but in May 2008, the Town learned that Lots 1A and 1B had either been sold or were under contract at free market prices.  The parties negotiated various amendments to the SIA and PUD, which increased the total number of units for the project from 18 to 20 and designated three units for community housing.  (***See id.***, Exh. A-11 ¶ C(7) at 3.)  Although defendants contend that plaintiffs failed to begin construction on the community housing units,[5] plaintiffs counter that it was agreed that community housing units would be marketed as "pre-sales," to be constructed only after a buyer had entered into a commercially reasonable contract.

Plaintiffs maintain that although they actively marketed the community housing units through the Town's administrative agent, Mountain Regional Housing Authority ("MRHA"), they found only one buyer.  Moreover, plaintiffs insist that the community

---

[4]  In so stating, I do not intend to express any opinion about whether community housing constitutes a "public improvement," an issue about which the parties disagree.

[5]  Defendants suggest that construction did continue on the free market units thereafter, noting that four Certificates of Occupancy ("CO"s) were issued after the amendments were approved.  Plaintiffs insist, however, that the COs were issued only for units that had been completed prior to the amendments and that plaintiffs undertook no new construction after the amendments.

housing contracts approved by MRHA included unreasonable conditions under which their lender refused to finance construction of pre-sale units.

On August 6, 2009, the Town, via its attorneys, sent plaintiffs a letter under the heading "**NOTICE OF BREACH AND NOTICE OF INTENT TO TAKE ACTION**" in which the Town stated its position that the failure to build the community housing units contemporaneously with the other units in the development constituted a breach of the parties' contract, as did plaintiffs' alleged refusal to allow MRHA to use its standard form contract to market and sell the units. (*Id.*, Exh. A-15 at 2.) The letter advised plaintiffs that if they did not cure within ten days, the Town would exercise its rights under the SIA, including recording an affidavit of default and withholding additional building permits and/or COs until the deficiencies had been cured. (*Id.*, Exh. A-15 at 3; *see also id.*, Exh. A-8 ¶ 18 at 11-12.)[6]

In October 2010 and August 2011, plaintiffs requested COs for two units in the Cleveland Place II development. Both were denied by the Town's building inspector, citing, *inter alia*, "pending litigation" and the affidavit of default.[7] Meanwhile, in March 2011, the Town's engineer performed a "warranty inspection" of the development and noted that some concrete had failed.[8]

---

[6] Because plaintiffs' principal was out of the country at the time, he did not receive notice of this letter until October 4, 2009. (*See* **Def. Motion App.**, Exh. A-16.)

[7] Although defendants assert that plaintiffs did not pursue any form of appeal of those denials, plaintiffs insist that there is no applicable process for appeals for denial of a CO based on the recording of an affidavit of default. The exhibit proffered by defendants in support of this particular issue is singularly unilluminating on the matter. (*See* **Def. Supp. Motion App.** [#51], Exh. 3 (replacing Exh. A-18).)

[8] Plaintiffs dispute whether the engineer, Chris Lehrman, had the expertise to determine that the problems with the concrete were caused by material and/or workmanship, and concomitantly, what, if any, portion of the repairs were attributable to warranty items.

Defendant Nancy Barnett, the acting town manager, notified plaintiffs on June 9, 2011, of the Town's intent to draw on the extant letter of credit unless the alleged deficiencies were cured within ten days.  Ms. Barnett presented a first sight draft on June 16, 2011, and a second on June 20, 2011.  Although plaintiffs filed a motion for a temporary restraining order to prevent the Town from calling in the letter of credit, the bank released the funds on June 20, 2011.

As a result of these events, the development is now in foreclosure, and plaintiffs represent that they are liable to their lenders for nearly three million dollars.  The suit they initially brought in Colorado state district court was eventually removed to this court after plaintiffs filed an amended complaint asserting claims under 42 U.S.C. § 1983.

Plaintiffs assert four such claims here, alleging violation of their constitutional rights of equal protection and substantive and procedural due process, as well as a claim alleging a regulatory taking under the Fifth Amendment.  In addition, plaintiffs have alleged state law claims for breach of contract and for declaratory and injunctive relief.  For their part, defendants have counterclaimed for breach of contract.

## A.  EQUAL PROTECTION

Plaintiffs' first claim asserts a violation of their rights of equal protection under the Fourteenth Amendment.  "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 127 S.Ct. 675 (2006) (citation and internal quotation marks omitted). The Equal Protection Clause  "does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant

6

respects alike." **Nordlinger v. Hahn**, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120

L.Ed.2d 1 (1992).  In general, and particularly in relation to economic and social welfare

issues, the state "retains broad discretion to classify as long as its classification has a

reasonable basis." **Graham v. Richardson**, 403 U.S. 365, 371, 91 S.Ct. 1848, 1852,

29 L.Ed..2d 534 (1971).  However, if the government's classification involves a suspect

class or burdens a fundamental constitutional right, the classification is subject to strict

scrutiny and must be narrowly tailored to serve a compelling government interest.  **Save**

**Palisade FruitLands v. Todd**, 279 F.3d 1204, 1210 (10th Cir.), **cert. denied**, 123 S.Ct.

81 (2002).

Plaintiffs do not argue (nor could they) that they are members of a suspect

class.[9]  Rather, they allege that they have a fundamental right to lease, sell, and convey

property which comes within the ambit of the Equal Protection Clause.  The single case

on which they rely for this proposition, however, is inapposite.[10]  Contrary to plaintiffs'

suggestion, the universe of fundamental rights implicated by the Equal Protection

Clause is fairly limited.  It includes the right of interstate travel, the right to vote, rights

guaranteed by the First Amendment and procedural due process, and various iterations

---

[9] Suspect classes include "discrete and insular minorit[ies]" based on nationality, race, or alienage.  **See Graham**, 91 S.Ct. at 1852 (citation and internal quotation marks omitted).  **See also See Save Palisade FruitLands**, 279 F.3d at 1210 (designation of suspect class "is based on characteristics beyond an individual's control and whether the class is saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process") (internal citations and quotation marks omitted).

[10] Plaintiffs cite to **United States v. Maybee**, 687 F.3d 1026 (8th Cir.), **cert. denied**, 133 S.Ct. 556 (2012), in which the court defined the term of art "badges and incidents of slavery" as used in the Thirteenth Amendment as including "restraints upon those fundamental rights which are the essence of civil freedom, namely the same right . . . to inherit, purchase, lease, sell and convey property, as is enjoyed by white citizens."  **Id.** at 1030 n.2 (citation and internal quotation marks omitted).

of the right of privacy implicating matters of an intimate personal nature.  **See**

**Oklahoma Education Association v. Alcoholic Beverage Laws Enforcement**

**Commission**, 889 F.2d 929, 932 (10th Cir. 1989);**see also United States v. Williams**,

124 F.3d 411, 422 (3rd Cir. 1997), **cert. denied**, 118 S.Ct. 698 (1998).  Beyond these

narrow categories, however, and following the lead of the Supreme Court, the Tenth

Circuit has been particularly reluctant to expand the realm of fundamental rights

protected under the Equal Protection Clause:

> It is not the province of this Court to create substantive
> constitutional rights in the name of guaranteeing equal
> protection of the laws.  Thus, the key to discovering whether
> [a right] is fundamental is not to be found in comparisons of
> the relative societal significance of [that right] as opposed to
> [others].  Nor is it to be found by weighing whether [that right]
> is as important as the right [that has been historically
> recognized].  Rather, the answer lies in assessing whether
> there is [such a] right . . . explicitly or implicitly guaranteed by
> the Constitution.

**Oklahoma Education Association**, 889 F.2d at 933 (citation and internal quotation

marks omitted) (concluding that right to pursue an occupation is not a fundamental right

for purposes of the Equal Protection Clause).

     More particularly, federal courts have concluded uniformly that the right to

dispose of one's property is not fundamental for equal protection purposes in

circumstances similar to those presented in this case.[11]  **See Hager v. City of West**

**Peoria**, 84 F.3d 865, 872 (7th  Cir. 1996) ("Access to real property does not rise to the

---

[11]  The proposed Final Pretrial Order (**see** [#98] at 5 n.6) suggests that there is a split of authority among the federal courts about whether such a right is indeed fundamental, although neither argument nor authority on the issue is presented, either in the proposed Final Pretrial Order or in briefing on the instant motions.  My own research has uncovered no authority finding such a right to be fundamental in the context of an equal protection claim.

level of a fundamental right such that its denial merits heightened scrutiny."); *Del Monte*

*Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) (no

fundamental right implicated by city's rejection of development proposal); *Carr HUML*

*Investors, LLC v. Arizona*, 2007 WL 4403981 at *9 (D. Ariz. Dec. 11, 2007) ("[T]here is

no fundamental right to build on, sell, or subdivide real property absent compliance with

government restrictions."); *Tanners Creek Properties, LLC v. Tremain*, 2003 WL

22284569 at *5 (S.D. Ind. Sept. 30, 2003) ("[W]e agree with Defendants that Plaintiff's

property right is more fairly characterized as a right to the benefit of its bargain rather

than as a fundamental right to develop and sell its real property."); *North Dixie Theatre,*

*Inc. v. McCullion*, 613 F.Supp. 1339, 1347 (S.D. Ohio 1985) (statute requiring flea

market operator to obtain motor vehicle dealer's license in order to rent space to people

wishing to sell cars did not impinge on fundamental right).  *See also John E. Long, Inc.*

*v. Borough of Ringwood*, 61 F.Supp.2d 273, 285 n.8 (D.N.J. 1998) (noting that

"[a]lthough one does have a fundamental right to acquire and dispose of real property, a

person does not have a fundamental right to use the property or have it zoned any way

he or she wishes"), *aff'd*, – Fed. Appx. –, 213 F.3d 628 (3rd Cr. March 2000) (citation

and internal quotation marks omitted).  Although not binding, these precedents are

instructive.[12]  Moreover, and particularly in light of the Tenth Circuit's reticence to

recognize new categories of fundamental rights,  I find and conclude that plaintiffs have

---

[12]  Moreover, and albeit in a slightly different context, the Tenth Circuit has held that the right to hunt on one's land is not fundamental for purposes of an equal protection challenge.  *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1580 (10th Cir. 1995) ("Economic regulations – i.e., those burdening one's property rights – have traditionally been afforded only rational relation scrutiny under the Equal Protection Clause.").

not asserted the violation of a fundamental right for purposes of their equal protection claim.

Alternatively, plaintiffs suggest they still may proceed to trial as a "class of one."[13] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). "To succeed on an equal protection claim as a class of one, a party must demonstrate that (1) it has been intentionally treated differently than those similarly situated; and (2) the difference in treatment was objectively irrational and abusive." *Furlong Enterprises, LLC v. Nickerson*, 785 F.Supp.2d 970, 980 (D. Colo. 2011) (internal citations and quotation marks omitted).

Assuming *arguendo* that plaintiffs can satisfy the first element – a proposition not at all clear from the record before me – they present nothing to substantiate the second. Plaintiffs must show "that they were singled out for persecution due to some animosity, meaning that the actions of [the Town] were a spiteful effort to 'get' [plaintiffs] for reasons wholly unrelated to any legitimate state activity." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (citation and internal quotation marks omitted). Although plaintiffs argue that the Town issued COs to other developers who had not built community housing units, the evidence reveals rational distinctions for these differences in treatment – most notably, that all these alleged comparators actually built community housing, whereas plaintiffs never did. Nor is there any other record evidence sufficient to allow a reasonable jury to conclude that defendants harbored the type of malice and ill will against plaintiffs sufficient to support a class-of-

---

[13] Plaintiffs do not argue that defendants' actions could not withstand a challenge under the rational relationship standard.

one claim.

For these reasons, I find and conclude that summary judgment is appropriate as to plaintiffs' equal protection claim, and the motion as to that claim therefore will be granted.

## B.  PROCEDURAL DUE PROCESS

The Fourteenth Amendment provides, *inter alia*, that the state may not deprive "any person of life, liberty, or property, without due process of law."  **U.S. CONST.**, amend. XIV.  The procedural component of due process protects "the opportunity to be heard at a meaningful time and in a meaningful manner."  ***Mathews v. Eldridge***, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citation and internal quotation marks omitted).  To make out a claim for violation of the right to procedural due process, plaintiffs must show, *inter alia*, the deprivation of an interest within the ambit of the protection of the Fourteenth Amendment, that is, an interest in "life, liberty, or property." ***See Ingraham v. Wright***, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); ***Elliott v. Martinez***, 675 F.3d 1241, 1244 (10th Cir. 2012).  "Protected liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States."  ***Kentucky Department of Corrections v. Thompson***, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 ,104 L.Ed.2d 506 (1989) (citation and internal quotation marks omitted).

Plaintiffs argue that they have a protected property interest by virtue of Colorado's Vested Property Rights Act, which provides:

> [a] vested property right shall be deemed established with
> respect to any property upon the approval, or conditional

11

> approval, of a site specific development plan, following
> notice and public hearing, by the local government in which
> the property is situated."

§24-68-103(1)(b), C.R.S.  The fact that state law creates a right, however, does not end

the constitutional inquiry.  It further must be determined whether, as a matter of "federal

constitutional law . . . that interest rises to the level of a legitimate claim of entitlement

protected by the Due Process Clause such that the right is a protected property right

protected by due process." *Cross Continent Development, LLC v. Town of Akron,*

*Colorado*, 742 F.Supp.2d 1179, 1188 (D. Colo. 2010) (quoting *Memphis Light, Gas*

*and Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978))

(internal quotation marks omitted).  Such a legitimate claim of entitlement exists only

when "the asserted right to property or liberty is mandated by state law [in that] specified

substantive predicates exist." *Elliott*, 675 F.3d at 1244.

        Plaintiffs' vested property right under state law consists of "the right to undertake

and complete the development and use of said property under the terms and conditions

of the site specific development plan including any amendments thereto."  §24-68-

103(1)(c), C.R.S.  In other words, plaintiffs have the right to complete the development

in accordance with the terms of the SIA and the PUD.  Yet their compliance with those

terms *vel non* is the crux of this lawsuit.  Without first determining that plaintiffs are not

in material breach of the contract, it is impossible to say that state law mandates a

decision in their favor.

        This determination reveals a related and even more fundamental problem with

plaintiffs' procedural due process claim, namely, that the circumstances in which a

breach of contract may give rise to a procedural due process claim are limited in any event. "[I]t is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." ***Taylor Acquisitions, L.L.C. v. City of Taylor***, 313 Fed. Appx. 826, 831 (6th Cir.), ***cert. denied***, 130 S.Ct. 299 (2009) (citation and internal quotation marks omitted). There is no viable claim for violation of the Due Process Clause when "the contract has not given rise to a greater interest than the contract itself, and so a wrongful termination of the contract may be fully remedied by a common law breach of contract action." ***DeBoer v. Pennington***, 287 F.3d 748, 750 (9th Cir. 2002). Therefore, "a claim for breach of contract generally does not support a due process claim unless state contract remedies are foreclosed to the plaintiff." ***Cross Continent Development***, 742 F.Supp.2d at 1187. Stated differently, "if the state provides a remedy through a breach of contract action in state court, there is no due process violation." ***Id.***[14]

It is clear beyond question that Colorado provides a remedy for breach of contract, which state law remedy plaintiffs have sought to avail themselves in this self-same action. Although the availability of such a claim for relief may be inadequate, and pre-deprivation procedures consequently required, if the plaintiff "was denied a right by virtue of which he was presently entitled . . . to exercise ownership dominion over real . . . property," ***Baird v. Board of Education for Warren Community Unit***, 389 F.3d 685, 691 (7th Cir. 2004), ***cert. denied***, 126 S.Ct. 332 (2005) (citation and internal quotation

---

[14] Chief Judge Easterbrook provides a thoroughgoing analysis – in the particularly colorful style and manner for which he is renowned – of this principle in ***Mid-American Waste Systems, Inc. v. City of Gary, Indiana***, 49 F.3d 286, 289-92 (7th Cir. 1995).

marks omitted), plaintiffs here were not denied any such right, *see Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196, 121 S.Ct. 1446, 1451, 149 L.Ed.2d. 391 (2001). Instead, they simply allege that they were denied the benefit of their bargain.  The pre-deprivation procedures mandated by due process are not implicated in these circumstances.  *See id.* (post-deprivation claim for breach of contract adequate where plaintiff's claim amounted to no more than deprivation "of payment that it contends it is owed under a contract, based on the State's determination that [plaintiff] failed to comply with the contract's terms.  [Plaintiff] has only a claim that it did comply with those terms and therefore that it is entitled to be paid in full.").

For these reasons, I find and conclude that defendants' motion for summary judgment as to plaintiffs' procedural due process claim must be granted.

## C.  SUBSTANTIVE DUE PROCESS

Due process also includes a substantive component, "the touchstone [of which] . . . is protection of the individual against arbitrary action of government . . . in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998)) (internal quotation marks omitted).  Plaintiffs may make out such a claim either by showing the infringement of a fundamental right or by presenting evidence suggesting that defendants' actions are so egregious as to "shock the conscience" of the court.  Neither of these benchmarks is met here.

The rights protected by substantive due process are carefully delimited to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," and thus are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (citations and internal quotation marks omitted).  Beyond specifically enumerated categories of interests, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*, 117 S.Ct. at 2267 (citation and internal quotation marks omitted).  More particularly, "substantive due process is not a blanket protection against unjustifiable interferences with property." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citation and internal quotation marks omitted).   The right to dispose of one's property as one sees fit is not one of the traditionally recognized fundamental rights for purposes of substantive due process. *See Mann v. Calumet City, Illinois*, 2009 WL 395465 at *6 (N.D. Ill. Feb. 17, 2009), *aff'd*, 588 F.3d 949 (7th Cir. 2009).

In the absence of such a right, rational-basis review prevails, *see Lee*, 330, F.3d at 467,[15] unless plaintiffs can demonstrate that defendants' alleged actions were so outrageous as to "shock the conscience of federal judges," *Uhlrig v. Harder*, 64 F.3d

---

[15]  Moreover, "when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in this deferential rational-basis review." *Lee*, 330 F.3d at 467 (citation and internal quotation marks omitted).  The parties present neither argument nor evidence relevant to this issue.

567, 573 (10th Cir. 1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115,

126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992)) (internal quotation marks omitted),

*cert. denied*, 116 S.Ct. 924 (1996).  This is indeed a lofty threshold, which requires that

plaintiffs

> do more than show that the government actor intentionally or
> recklessly caused injury to the plaintiff by abusing or
> misusing government power.  Instead, [they] must
> demonstrate a degree of outrageousness and a magnitude
> of potential or actual harm that is truly conscience shocking.

*Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (citation

and internal quotation marks omitted).  As implied in the statement of the standard itself,

the question whether conduct is conscience shocking is one of law for the court.  *See*

*Perez v. Unified Government of Wyandotte County/Kansas City, Kansas*, 432 F.3d

1163, 1168 n.4 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 2971 (2006).

Assuming *arguendo* that it is proper to consider plaintiffs' claims under the rubric

of substantive due process at all, as opposed to a more particularized constitutional

guarantee, *see Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d

114 (1994), I cannot conclude that defendants' alleged actions in this lawsuit, even

construed in the light most favorable to plaintiffs, are so arbitrary and outrageous as to

shock the conscience.  The actions plaintiffs describe outline a disagreement – albeit

undoubtedly a vigorous one – about the proper interpretation of the terms of a

contract.[16]  Such is not the stuff of a substantive due process claim.  The motion for

---

[16] Plaintiffs assert in their response that the Town "made false and defamatory statements about
Developer to unit owners in the Development and other developments" (**Plf. Resp.** at 19 [#59], filed
December 17, 2012), but fail to cite the court to any evidence in the record or otherwise identify these
alleged statements in any particular.

summary judgment thus will be granted as to this claim as well.

## D.  VIOLATION OF THE TAKINGS CLAUSE

Plaintiffs allege an unconstitutional taking in the October 2010 and August 2011 denials of COs for the two units that ostensibly are otherwise ready for occupancy, as well as in the calling in of the letter of credit.[17]  These allegations implicate a claim of a regulatory, as opposed to a physical, taking.  *See Yee v. City of Escondido, California*, 503 U.S. 519, 522-23, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992).  A regulatory taking occurs "when a regulatory or administrative action places such burdens on ownership of private property that essential elements of such ownership must be viewed as having been taken."  *Kemp v. United States*, 65 Fed. Cl. 818, 821 (2005) (citation and internal quotation marks omitted).

In analyzing such a claim, it is important to remember that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."  *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985).  As a necessary corollary of that principle, a takings claim is not ripe until the plaintiff has sought and been denied just compensation.  *Id.*, 105 S.Ct. at 1320

> Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation

---

[17]  It is not entirely clear whether plaintiffs intend to invoke the Colorado Constitution as well.  To the extent they do, the Colorado Takings Clause is consistent with, and at least as broad as, the Fifth Amendment Takings Clause, making the court's determination under one provision coextensive with the other.  *See Animas Valley Sand and Gravel, Inc. v. Board of County Commissioners of the County of La Plata*, 38 P.3d 59, 64 (Colo. 2001).

> exist at the time of the taking.  If the government has
> provided an adequate process for obtaining compensation,
> and if resort to that process yields just compensation, then
> the property owner has no claim against the Government for
> a taking.

*Id.* at 3120-21 (internal brackets, citations, and quotation marks omitted).  For this reason, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Id.* at 3121.

Colorado does provide such a procedure by virtue of its eminent domain statute, *see* §§ 38-1-101 - 38-1-122, C.R.S., which affords property owners the right to institute inverse condemnation proceedings against the state, *see Casey v. Colorado Higher Education Insurance Benefits Alliance Trust*, – P.3d –, 2012 WL 3517612 at *8 (Colo. App. Aug. 16, 2012).  Plaintiffs' suggestion that this statute does not apply to regulatory takings is baseless.[18]  Although inverse condemnation is not the exclusive remedy for a regulatory taking under Colorado law, the exceptions to that process are limited to circumstances in which the plaintiff cannot bring an inverse condemnation proceeding because the alleged taking was done by a state agency that has no power

---

[18] Plaintiffs' reliance for this proposition on the district court's decision in *Obendorf v. City and County of Denver*, 653 F.Supp. 304 (D. Colo. 1986), is particularly perplexing.  The *Obendorf* plaintiffs argued specifically that they were *not* asserting a takings claim, but rather were seeking damages related to an alleged a conspiracy to fraudulently designate plaintiffs' property as "blighted" in order to have it condemned.  *See id.* at 306.  The district court rejected the defendants' attempt to recharacterize the plaintiffs' claims as involving a claim for just compensation under the Takings Clause, noting that "[i]n fact, if plaintiffs seek just compensation through inverse condemnation proceedings, then the objective, which defendants' conspiracy was designed to achieve, would be realized."  *Id.* at 308.  Indeed, the plaintiffs there conceded that had they been seeking just compensation, such a claim would not have been ripe unless and until they had pursued an inverse condemnation action in state court.  *Id.*  Moreover, the viability of *Obendorf* on its own merits has been called into question.  *See First Bet Joint Venture v. City of Centry City by and through City Council*, 818 F.Supp. 1409, 1411-12 (D. Colo. 1993)

to condemn. *State, Department of Health v. The Mill*, 809 P.2d 434, 440 (Colo.

1991).[19]  By contrast, the Town of Carbondale is a home rule municipality, fully

possessed of the power of eminent domain. *See Town of Telluride v. San Miguel*

*Valley Corp.*, 185 P.3d 161, 165 (Colo. 2008) (noting that section 1 of article XX of the

Colorado Constitution grants home rule municipalities the power of eminent domain).

Accordingly, plaintiffs' takings claim is not ripe, and the motion for summary

judgment is granted as to that claim.

## E.  BREACH OF CONTRACT

Thus, the only remaining claims for consideration are the parties' respective state

law claims for breach of contract .[20]  When all federal claims have been dismissed prior

to trial, the court generally should decline to exercise supplemental jurisdiction over

pendant state claims. *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002).

I find it appropriate to decline to exercise supplemental jurisdiction, and thus will remand

the remaining state law claims to the state district court from which they were removed.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

---

[19]  The reasons underlying such a determination are obvious:

> We decline to restrict the remedy for a taking to inverse condemnation
> where the potential consequence of such a holding would be that a
> property owner would have no remedy for a violation of the self-executing
> Takings Clauses of the United States and Colorado Constitutions.
> Limiting a property owner to an inverse condemnation action against an
> agency that does not have the power of eminent domain would enable
> the State to take property without paying compensation, in violation of the
> United States and Colorado Constitutions.

*The Mill*, 809 P.2d at 440 (footnote omitted).

[20]  These claims are implicated also in plaintiffs' claims for declaratory and injunctive relief.

1.  That **Defendants' Motion for Partial Summary Judgment and Memorandum Brief in Support Thereof** [#50], filed November 16, 2012, is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.  That the motion is **GRANTED** concerning the claims of the plaintiffs for alleged violation of their rights under the United States Constitution brought pursuant to 42 U.S.C. § 1983: specifically, the claims for violation of the guarantees of equal protection and substantive and procedural due process under the Fourteenth Amendment and for violation of the Just Compensation Clause of the Fifth Amendment; and

   b.  That in all other respects, the motion is **DENIED AS MOOT**;

2.  That **Plaintiffs' Motion for Partial Summary Judgment** [#49], filed November 16, 2012, is **DENIED AS MOOT**;

3.  That **Plaintiffs' Motion *In Limine* To Exclude Testimony of Gary Suiter**, [#34], filed October 17, 2012, is **DENIED AS MOOT**;

4.  That judgment **SHALL ENTER** on behalf of defendants, Town of Carbondale, a Colorado home-rule municipality; Nancy Barnett, in her official capacity as Acting Town Manager for the Town of Carbondale, Colorado; and John Plano, in his official capacity as the Building Official for the Town of Carbondale, Colorado, and against plaintiffs, 211 Eighth, LLC, a Colorado Limited Liability Company; and Prince Creek Construction, Inc., a Colorado corporation, on plaintiffs' claims brought pursuant to 42 U.S.C. § 1983; provided,

a.  That the dismissal of and concomitant judgment on plaintiffs' claims for violation of the Just Compensation Clause shall be without prejudice; and

b.  That the dismissal of and concomitant judgment on plaintiffs' remaining federal claims under the Fourteenth Amendment shall be with prejudice;

5.  That as prevailing parties, defendants are **AWARDED** their costs to be taxed by the clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

6.  That the trial set to commence February 25, 2013, is **VACATED**; and

7.  That this case is **REMANDED** to the District Court of Garfield County, Colorado (where it was filed originally as Case Number 2011CV166).

Dated February 11, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge